**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                 Plaintiff,<br>  vs.<br>ADAM GRANT GUNDERSON,<br><br>                                Defendant. | CASE NO. 08cr2348 WQH<br><br>ORDER |

HAYES, Judge:

      The matter before the Court is Defendant's motion to vacate judgment and grant new trial. (Doc. # 48).

**BACKGROUND FACTS**

      On June 21, 2008, at approximately 4:45 p.m., Defendant approached the primary inspection area at the Interstate 8 Border Patrol Checkpoint in Pine Valley, California. Defendant was the driver and sole visible occupant of a 1993 Mercedes Benz. As Defendant approached primary inspection, Border Patrol Agent Juan Carlos Sarantes noticed that the rear of the vehicle appeared riding low.

      Defendant came to a stop at primary inspection and continued to talk on his cell phone. Agent Sarantes asked Defendant to state his citizenship. Defendant continued to talk on his cell phone and did not respond to Agent Sarantes. Agent Sarantes asked again and Defendant stated that he was a citizen of the United States. Agent Sarantes asked if he could search the

1  trunk of the vehicle and Defendant responded yes but told Agent Sarantes that the trunk was
2  not working. Agent Sarantes asked what was wrong with the trunk and Defendant responded
3  "I don't know." (Transcript at 89). Agent Sarantes asked if he could open the trunk and
4  Defendant responded "Go ahead, if you can." *Id*.

5       Agent Sarantes pressed on the handle of the trunk and opened the trunk. Agent Sarantes
6  observed two individuals in the trunk. Agent Sarantes asked the two individuals inside the
7  trunk if they were illegal aliens and one of them responded that he was. Agent Sarantes closed
8  the trunk, returned to the Defendant, and asked "who are the people in the trunk?" (Doc. 27
9  at 2). Defendant responded "I don't know." (Doc. # 31at 3). Agent Sarantes instructed the
10 Defendant to exit the vehicle. The vehicle was taken to secondary. Defendant was arrested.

11      At approximately 10:15 p.m., Defendant was advised of his *Miranda* rights and invoked
12 his right to remain silent.

13      On July 16, 2008, a federal grand jury in the Southern District of California returned
14 an indictment charging Defendant with two counts of transporting and moving an illegal alien
15 within the United States in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii).

16      On July 17, 2008, Defendant was arraigned on the Indictment and entered a plea of not
17 guilty.

18      Prior to trial, Defendant moved to suppress any statement made to Agent Sarantes after
19 the agent "found undocumented aliens hidden in trunk." (Doc. # 27 at 2). The Government
20 stated in response "[i]n its case-in-chief, the Government does not intend to use statements
21 made by Defendant after Agent Sarantes discovered the aliens in the trunk." (Doc. # 30 at 3).

22      On October 14, 2008, the Court held a motion in limine hearing at which Government
23 counsel confirmed that the Government did not intend to use any statement made by the
24 Defendant after the agent had opened up the trunk and discovered people in the trunk of the
25 vehicle. Government counsel stated that the Government would seek to use Defendant's
26 statement "if the Defendant were to take the stand." The Court asked Defense Counsel for her
27 position in that regard. Defense counsel stated:

28      Counsel for Defendant:   I think for impeachment, it's admissible. My motion was on *Miranda* grounds, so.

| | | |
|---|---|---|
| 1 | The Court: | Is it fair to say the, your motion only dealt with whether *Miranda* was complied with? |
| 2 | Counsel for Defendant: | Correct. |
|   | The Court: | And not voluntariness? So your issue is *Miranda*. The Government didn't comply with *Miranda*, so they can't use it in their case-in-chief. But your motion does not address the issue of whether they could use it for cross-examination or in rebuttal? |
| 5 | Counsel for Defendant: | That's right, your Honor. |
|   | The Court: | All right. And so there is no opposition from the Government that the motion be granted with respect to the motion being suppressed in the government's case in chief, so I will grant that only with respect to the government's case in chief. |

(Transcript pages 19-20).

Trial commenced on October 15, 2008. During its case-in-chief, the Government presented the testimony of Agent Sarantes, Agent Munoz, and the two material witnesses. The Government did not present any evidence about Defendant's statements or demeanor after Agent Sarantes found the individuals in the trunk.

After the Government rested, Defendant took the witness stand. On direct examination, Defense counsel asked the Defendant when he first learned that there were people in the trunk of his car. Defendant testified as follows:

| | | |
|---|---|---|
| | Counsel for Defendant: | After [Agent Sarantes] looked in the trunk, what did he do?  . . . |
| | Defendant: | He opened it and then just as quick as he opened it, he closed again and stepped back to the window. |
| | Counsel for Defendant: | Did he come back to talk to you? |
| | Defendant: | Yes, he did. |
| | Counsel for Defendant: | At that point, did he place you under arrest? |
| | Defendant: | He asked me to step out of the car. I asked him why. He said, step out of the car, please. And so I stepped out. |
| | Counsel for Defendant: | When you were at the checkpoint, did you know that there were people in the trunk - |
| | Defendant: | No ... |
| | Counsel for Defendant: | When did you first learn there were people in the trunk of the car? |
| | Defendant: | When I had stepped out of the car, he had done this motion (gesturing) for another Border Patrol agent to come over. And then he actually got in the car and he is the one who drove it to the secondary inspection, which you saw in the pictures. .... But they motioned to the car, open the trunk, open the trunk, something to that effect. When they opened the trunk, you could see sticking up like this (gesturing) in the trunk. You could tell there was something kind of crunched up in the trunk. |
| | Counsel for Defendant: | What did you think when you saw those men? |
| | Defendant: | I was pretty much in disbelief. Didn't believe that was the car I was driving. I was - I didn't know what - the person |

- 3 -                                                                 08cr2348 WQH

|   |   |   |
|---|---|---|
| 1 | | didn't make any effort to get out of the - to get out of the trunk, wasn't moving. I honestly did not know what to think. |
| 2 | | |
| 3 | Counsel for Defendant: | No further questions. Thank you. |

(Transcript pages 205-207).

On cross-examination, Government counsel questioned the Defendant in part as follows:

| | | |
|---|---|---|
| Counsel for Government: | You mentioned that after Agent Sarantes opened the trunk, he came back to you, right? |
| Defendant: | Right. |
| Counsel for Government: | He actually asked you a question when he came back to you; isn't that right? |
| Defendant: | He asked me to step out of the car, yes. |
| Counsel for Government: | Didn't he ask you, who are those people in the trunk of the vehicle? |
| Defendant: | No, at that time, he just asked me to step out of the car. |
| Counsel for Government: | And - well, he didn't ask you, who are those people in the trunk of the vehicle, and your response was, I don't know. |
| Defendant: | That was when we were actually inside of the building. |
| Counsel for Government: | And what he told you that there were two people inside the trunk, your answer simply was, I don't know, right? |
| Defendant: | Yeah, I believe so. I had actually - |
| Counsel for Government: | With a - I'm sorry - with a straight face, right? |
| Counsel for Defendant: | Objection, your Honor. Argumentative. |
| The Court: | Overruled. |
| Counsel for Government: | Were you surprised that there were two people - |
| Defendant: | Yeah. |
| Counsel for Government: | -in the trunk of the vehicle? |
| Defendant: | Yes, yes, I was very surprised. |
| Counsel for Government: | But you simply said, I don't know? |
| Defendant: | I believe he asked - |
| Counsel for Defendant: | Your Honor, can we have a sidebar, please? |

(Transcript page 238-239).

Defense counsel asked the Court to strike the question by Government counsel "But you simply said, I don't know?" on the grounds that it "makes a subtle suggestion that he should have said something more."[1] (Transcript at 240). The Court obtained the transcript, reviewed the questions asked and answers given with counsel, and instructed the jury to disregard all of the questions and answers stated above. The Court read back the questions and answers stated above to the jury, specifically instructed the jury that these questions and answers were

---

[1] Prior to the resolution of the issue, Counsel for Defendant stated "I think after consulting with some other attorneys from my office, I also move for mistrial under Valarde-Gomez for the reasons stated at sidebar." Transcript page 245.

1 stricken from the record, and instructed the jury that they could not consider them or draw any
2 inferences from them. (Transcript pages 249-250). The Court further instructed Government
3 counsel not to argue any statement made by the Defendant after Agent Sarantes opened the
4 trunk of the car in closing argument. Government counsel proceeded with cross-examination
5 without any reference to Defendant's silence or any statement made by the Defendant after
6 Agent Sarantes opened the trunk of the car in closing argument.

7 At the close of the evidence the Court instructed the jury, including an instruction that
8 they must not consider any testimony that was excluded or stricken, and testimony that they
9 have been instructed to disregard. (Transcript page 276).

10 During closing argument and rebuttal argument, the Government did not make any
11 reference to the stricken testimony or to any statement made by the Defendant after Agent
12 Sarantes opened the trunk of the car.

13 On October 16, 2008 at 2:17 p.m., the jury began deliberating. Approximately one hour
14 later, the jury sent out a note which stated "What exactly was thrown out that we should not
15 consider?" (Court Exhibit 1). The Court convened the parties and read to the jury the
16 following answer agreed to by the Government and the Defendant:

> The Court struck the testimony elicited during Mr. Gunderson's cross-examination. The Court struck Ms. Caldito's questions that related to any statement made by Mr. Gunderson after Agent Sarantes opened the trunk. You are to disregard all of the testimony related to any questions and answers that occurred after Agent Sarantes opened the trunk. And then, I also remind you that in the instructions, that you have received, jury instructions, jury instruction number 6, paragraph 3, the first line says, testimony that has been excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered.

(Transcript page 329-330). The jury returned to deliberate at 4:41 p.m. At 4:57p.m., the jury returned a verdict of guilty on both counts of the indictment.

**CONTENTIONS OF PARTIES**

Defendant contends that the question by Government counsel "But you simply said, I don't know?" on cross-examination constituted a comment on silence in violation of his Fifth Amendment protection against self-incrimination. Defendant contends that after Agent Sarantes opened the trunk he was not free to leave and that Agent Sarantes' question "Who are

1  the people in the trunk?" improperly confronted him with respect to guilt. Defendant asserts
2  that the Government's cross-examination violated his right to remain silent suggesting that if
3  he were telling the truth in court, he would have said something more to the question asked by
4  Agent Sarantes after he opened the trunk. Defendant asserts that the jury in this case remained
5  confused about what evidence they were not to consider and that the confusion lasted
6  throughout the trial. Defendant asserts that his credibility was critical to his defense and that
7  he was prejudiced by the in violation of his Fifth Amendment protection against self-
8  incrimination.

9        The Government asserts that the question was proper cross examination. The
10 Government asserts that the Defendant took the stand and testified that he first learned that
11 there were aliens in his vehicle when he saw them in the trunk in the secondary area and that
12 the Defendant testified that he was surprised when he saw the aliens in the trunk of his vehicle.
13 The Government asserts that the question was intended to point out the inconsistency between
14 his testimony at trial and his pre-*Miranda* statements and demeanor. The Government asserts
15 that there was no constitutional error in that the cross-examination was limited to a reference
16 to a post-arrest, pre-*Miranda* silence; and no evidence of post arrest silence was ever submitted
17 to the jury.

18                                      **ANALYSIS**

19       Rule 33(a) of the Federal Rules of Criminal Procedure states in part "Upon the
20 defendant's motion, the court may vacate any judgment and grant a new trial if the interest of
21 justice so require." The Fifth Amendment provides that "[n]o person ... shall be compelled in
22 any criminal case to be a witness against himself." U.S. Const. Amend.V. "The warnings
23 mandated by [*Miranda* are] a prophylactic means of safeguarding Fifth Amendment rights."
24 *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240 (1976). This right to remain silent carries an
25 "implicit assurance" that silence will carry no penalty. *Id.* at 617. "*Doyle* rests upon the
26 fundamental unfairness of implicitly assuring a suspect that his silence will not be used against
27 him and then using his silence to impeach an explanation subsequently offered at trial."
28 *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634 (1986). (internal quotation

1 omitted). "Absen[t] the sort of affirmative assurances embodied in the *Miranda* warnings, the
2 Constitution does not prohibit use of a defendant's post arrest silence to impeach him at trial."
3 *Greer v. Miller*, 483 U.S. 756, 763, 107 S.Ct. 3102 (1987).  "The government may use a
4 defendant's post-arrest, pre-*Miranda* silence for impeachment, but it may not do so 'in its case-
5 in-chief.'" *United States v. Hernandez*, 476 F.3d 791, 796 (9th Cir. 2007) quoting *United
6 States v. Velarde-Gomez*, 269 F.3d 1023, 1029, FN1 (9th Cir. 2001).

7 In this case, the Government's question on cross-examination "But you simply said I
8 don't know" made reference to a post-arrest, pre-*Miranda* statement by the Defendant in an
9 attempt to impeach his direct trial testimony that he was surprised when he learned that there
10 were two individuals in the trunk of the car he was driving. Government counsel asked "were
11 you surprised that there were two people in the trunk of the vehicle?"  and Defendant
12 responded "Yes, yes, I was very surprised."  Government counsel then asked "But you simply
13 said, I don't know?"  Defense counsel asked for sidebar and raised an objection to this
14 question.  The Court contemporaneously sustained the objection and struck the line of
15 questioning.  The question asked by Government counsel and objected to by Defense counsel
16 did referred to Defendant's post-arrest, pre-*Miranda* silence, and was not asked in the
17 Government's case-in chief.  The Court concludes that the question asked by Government
18 counsel did not violate Defendant's Fifth Amendment protections against self-incrimination.
19 *See Velarde-Gomez*, 269 F.3d at 1029, FN1.

20 To the extent that this question asked on cross-examination could be construed as an
21 improper comment on Defendant's silence, the Government has proven that any error was
22 harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). "In
23 the context of comments on silence, the Court of Appeals considers three factors: (1) the extent
24 of comments made by the witness, (2) whether an inference of guilt from silence was stressed
25 to the jury, and 3) the extent of other evidence suggesting defendant's guilt." *United States
26 v. Hernandez*, 476 F.3d 791, 797 (9th Cir. 2007).

27 In this case, all of these factors support a finding of harmlessness.  As to the first factor,
28 the question objected to by Defense counsel was brief.  The Court sustained the initial

1 objection of the Defendant to the cross-examination and struck and the entire line of
2 questioning. The jury was specifically informed of the questions and answers which they were
3 not to consider at that time and instructed in the general jury instructions at the close of
4 evidence that testimony that has been stricken is not evidence and must not be considered.
5 When the jury asked for clarification, the Court clarified specifically with the agreement of the
6 Defendant informing the jury not "to disregard all of the testimony related to any questions and
7 answers that occurred after Agent Sarantes opened the trunk." (Transcript at 330).

8       As to the second factor, the Court sustained the objection of the Defendant to the
9 question on cross-examination and Government counsel proceeded with cross-examination
10 without making any reference to Defendant's silence or his statement to Agent Sarantes after
11 the trunk was opened. Government counsel did not refer in any way to any statement or
12 demeanor of the Defendant after Agent Sarantes opened the trunk of the car at any other point
13 in the trial.

14       Finally, the extent of the evidence suggesting Defendant's guilt supports a finding of
15 harmlessness. Defendant was the driver and sole occupant in a car with two individuals hiding
16 in the trunk. Defendant lied to the agent at primary about the trunk being broken. There was
17 no way for the material witnesses to get out of the trunk without the assistance of the
18 Defendant and the smuggling profit would have been lost if the material witnesses had died
19 in the trunk. The jury evaluated the evidence and returned a verdict of guilty on both counts
20 without lengthy deliberations.

21       Taking all of these factors into consideration, the Court concludes that the limited
22 reference at issue was not prejudicial to the Defendant and any error which may be inferred
23 was harmless. IT IS HEREBY ORDERED that Defendant's motion to vacate judgment and
24 grant new trial (Doc. # 48) is DENIED.

25 DATED: March 4, 2009

26                              *William Q. Hayes*
                            **WILLIAM Q. HAYES**
27                             United States District Judge

28